UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| MITCHELL MORROW, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | Case No. 3:20-cv-00664-GCS |
| WEXFORD HEALTH SOURCES, | ) | |
| INC., D. BLACKBURN, and VENERIO | ) | |
| SANTOS, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |

## MEMORANDUM & ORDER

**SISON, Magistrate Judge:**

Plaintiff Mitchell Morrow, an inmate currently in the custody of the Illinois Department of Corrections ("IDOC") and incarcerated at Centralia Correctional Center ("Centralia"), first brought suit against Defendants Blackburn, Santos, and Wexford Health Sources, Inc. ("Wexford") pursuant to 42 U.S.C. § 1983 on July 8, 2020. (Doc. 1). In his complaint, Plaintiff alleged three counts of deliberate indifference to his serious medical needs in violation of the Eighth Amendment. (Doc. 13, p. 4). Count I states that Defendant Blackburn failed to review Plaintiff's medical file and provide him with proper care for his anemia. *Id.* Count II posits that Defendant Santos failed to care for Plaintiff's anemia and shoulder pain properly. *Id.* Count III claims that Defendant Wexford maintains policies and practices which caused Plaintiff to receive improper care for his anemia and shoulder pain. *Id.* Now before the Court is a motion for summary

judgment on the issue of exhaustion of remedies as to Counts II and III of Plaintiff's complaint by Defendants Santos and Wexford. (Doc. 42). For the reasons delineated below, the motion for summary judgment is **GRANTED in part and DENIED in part.**

### FACTUAL BACKGROUND

Medical professionals at Lawrence Correctional Center ("Lawrence") first diagnosed Plaintiff with anemia in 2011. (Doc. 52, p. 2). From August 2011 through May 2012, doctors prescribed Plaintiff iron supplements in order to treat the symptoms of his condition. *Id*. However, a note in Plaintiff's medical chart dated July 2012 indicated that Plaintiff's anemia was resolved. *Id*.

On July 1, 2015, Plaintiff was transferred from Lawrence to Centralia. (Doc. 52, p. 2). Plaintiff first saw Defendant Santos for medical treatment on July 20, 2018, after complaining of swelling in his legs and ankles and shortness of breath. *Id*. at p. 3. In response, Defendant Santos ordered Plaintiff to reduce his salt intake. *Id*. However, Plaintiff's symptoms continued to worsen. *Id*. On April 18, 2019, Plaintiff saw Defendant Santos again; this time, Defendant Santos ordered a basic metabolic panel, complete blood count, and stool samples. (Doc. 43, p. 3). The laboratory returned critical results; accordingly, on April 24, 2019, Defendant Santos ordered that Plaintiff be sent to the emergency room for an evaluation. *Id*. The hospital treating Plaintiff noted that he had acute blood loss anemia due to an underlying gastrointestinal condition. *Id*.

Plaintiff first filed a grievance regarding Defendant Santos's treatment on May 2, 2019. (Doc. 43, Exh. B, p. 34-35). In his May 2nd grievance, Plaintiff explains that he

received an iron supplement while incarcerated at Lawrence, but Defendant Santos did not continue the treatment. *Id*. Plaintiff also claims that this was the reason he was hospitalized. *Id*. The grievance officer reviewed Plaintiff's claims on their merits, and Plaintiff properly appealed the grievance to the Administrative Review Board ("ARB"). *Id*. The ARB denied this grievance as appropriately addressed by the facility administration. (Doc. 52, p. 88).

Plaintiff also filed a May 9, 2019 grievance stating that a policy requiring inmates to walk when transported to the emergency room resulted in unnecessary pain to his feet. (Doc. 52, p. 89-92). In the May 9th grievance, Plaintiff did not name any particular defendant, but did state that his grievance applied to the Health Care Unit ("HCU"). This grievance was also reviewed by Plaintiff's grievance officer, and on July 8, 2019, the ARB denied this grievance on its merits. *Id*. at p. 92.

On August 22, 2019, Plaintiff filed a third grievance pertaining to his anemia treatment. (Doc. 43, Exh. B, p. 13). In this grievance, Plaintiff states that Defendant Wexford does not provide adequate follow up treatment after an inmate is diagnosed with a serious medical condition. (Doc. 43, Exh. B, p. 14). Plaintiff claims that a visiting physician told him he should have received regular follow-up blood testing after his anemia diagnosis at Lawrence; however, he did not receive this testing while incarcerated at either facility. *Id*. Plaintiff properly appealed the denial of this grievance, and on September 20, 2018, the ARB denied Plaintiff's appeal as "appropriately addressed by the facility Administration." (Doc. 43, Exh. B, p. 11).

Plaintiff also began seeking treatment from Defendant Santos regarding shoulder pain in May 2019. (Doc. 43, p. 5). When Plaintiff saw Defendant Santos on May 17, 2019, Defendant Santos diagnosed Plaintiff with tendinitis and prescribed him a warm compress and Tylenol tablets for ten days. *Id*. However, after Plaintiff had surgery for hemorrhoids, he was prescribed a different pain medicine for seven days. *Id*. Plaintiff again complained of shoulder pain on July 21, 2019. *Id*. at p. 6. He refused protocol pain medication and was referred to a doctor. *Id*. On July 23, 2019, Defendant Santos found no noted issues with Plaintiff's shoulder. *Id*.

Plaintiff first grieved inadequate care for his shoulder pain on June 5, 2019. (Doc. 52, p. 93). In his June 5th grievance, Plaintiff stated that Defendant Santos changed his medical prescription, and that he remained in pain. *Id*. Though Plaintiff referred to pain while urinating or defecating, he did not refer to pain in his shoulder. *Id*. at p. 94. The ARB denied Plaintiff's appeal of this grievance on its merits. *Id*. at p. 96.

On August 15, 2019, Plaintiff again grieved the treatment he received for his shoulder. (Doc. 52, p. 97). Plaintiff stated that he saw Defendant Santos on July 22, 2019, and he tried to explain that Tylenol was not treating his shoulder pain. *Id*. at p. 98. Plaintiff also claimed that he was still experiencing pain and that the pain was continuing to get worse. *Id*. The ARB denied Plaintiff's appeal of this grievance as appropriately addressed by the facility administration. *Id*. at p. 100.

LEGAL STANDARDS

Summary judgment is proper when a moving party demonstrates that the record cannot establish the presence of a genuine dispute of material fact. *See* FED. R. CIV. PROC. 56(a). In order to survive a motion for summary judgment, the non-moving party must provide admissible evidence from which a reasonable jury could find in favor of the non-moving party. *See Maclin v. SBC Ameritech*, 520 F.3d 781, 786 (7th Cir. 2008). Traditionally, the Court's role in determining a motion for summary judgment is not to evaluate the weight of the evidence, judge witness credibility, or determine the truth of the matter, but is instead to determine whether there is a genuine issue of material fact. *See Nat'l Athletic Sportwear Inc. v. Westfield Ins. Co.*, 528 F.3d 508, 512 (7th Cir. 2008). However, in *Pavey v. Conley*, the Seventh Circuit held that a judge, rather than a jury, should determine whether factual issues relating to the defense of the failure to exhaust administrative remedies exist. 544 F.3d 739, 741 (7th Cir. 2008). If the Court determines that a prisoner did not exhaust his administrative remedies, the Court will outline one of three potential outcomes: (a) if the plaintiff still has time to do so, the plaintiff must go back and exhaust his administrative remedies; (b) if the plaintiff's failure to exhaust was innocent, as where prison officials prevent a prisoner from exhausting his remedies, the plaintiff must be given another chance to exhaust; or (c) if the failure to exhaust was the prisoner's fault, the case is over. *Id.* at 742.

The PLRA governs lawsuits filed by inmates and states that "no action shall be brought with respect to prison conditions under § 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such

administrative remedies as are available are exhausted."42 U.S.C. § 1997e(a).  In order to satisfy the PLRA's exhaustion requirement, prisoners must strictly adhere to the grievance process. *See Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006). Prisoners must exhaust their remedies before filing suit. *See Ford v. Johnson*, 362 F.3d 395, 398 (7th Cir. 2004). A plaintiff cannot file suit and then exhaust administrative remedies while that suit is pending. *Id*. Consequently, if a prisoner fails to use a prison's grievance process properly, "the prison administrative authority can refuse to hear the case, and the prisoner's claim can be indefinitely unexhausted." *Dole*, 438 F.3d at 809.

Prisoners must follow a prison's administrative rules when exhausting their remedies. *See Pozo v. McCaughtry*, 286 F.3d 1022, 1023 (7th Cir. 2002). As an inmate confined within the IDOC, Plaintiff is required to follow the regulations contained in the IDOC's Grievance Procedures for Offenders ("grievance procedures") in order to properly exhaust his claims. *See* 20 ILL. ADMIN. CODE § 504.800, *et seq.* The grievance procedures require prisoners to submit a grievance to a counselor within sixty days of discovering the underlying incident. *See* 20 ILL. ADMIN. CODE § 504.800. These grievances must state the "factual details regarding each aspect of the offender's complaint including what happened, when, the name of any individual involved, and where the incident occurred." 20 ILL. ADMIN. CODE § 504.810(a). If a prisoner is not satisfied with the counselor's response to the grievance, then that prisoner can submit a formal grievance to the prison's grievance officer. *Id*. at (a)-(b). The officer must then review the grievance and provide a written response to the inmate. *See* 20 ILL. ADMIN. CODE § 504.830(a). Within two months of receipt of the grievance, when reasonably feasible under the

circumstances, the grievance officer must report findings and recommendations in writing to the Chief Administrative Officer ("CAO"). *See* 20 Ill. Admin. Code § 504.830(e). If the prisoner is still not satisfied with the CAO's decision, the prisoner can formally appeal to the Director through the ARB within thirty days of the CAO's decision. *See* 20 Ill. Admin. Code § 504.850(a). The inmate must attach copies of the grievance officer's report and the CAO's decision to the appeal. *Id.* The ARB then submits its recommendation to the Director, who is then responsible for issuing the IDOC's final decision. *See* 20 Ill. Admin. Code § 504.850(f).

The grievance process also permits an inmate to file an emergency grievance directly to the CAO. *See* 20 Ill. Admin. Code § 504.840(a). The CAO may determine if there is a substantial risk of imminent personal injury or other serious harm to the offender. *Id.* If the CAO determines that the grievance is a non-emergency, the prisoner is notified in writing that the prisoner may resubmit the grievance as a non-emergency and move forward with the standard grievance process. *See* 20 Ill. Admin. Code § 504.840(c).

The statutory purpose of the PLRA is to "afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Woodford v. Ngo*, 548 U.S. 81, 93 (2006); *see also Begolli v. Home Depot U.S.A., Inc.*, 701 F.3d 1158, 1161 (7th Cir. 2012). This allows the prison administration an opportunity to fix the problem or to reduce damages and to shed light on factual disputes that may arise in litigation. *See Pozo*, 286 F.3d at 1023-24. To allow otherwise would frustrate the purpose of the grievance process. *See Porter v. Nussle*, 534 U.S. 516, 526 (2002). Accordingly, a

prisoner cannot satisfy the exhaustion requirement by filing an untimely or otherwise procedurally defective grievance. *See Woodford*, 548 U.S. at 83. Unless a prisoner completes the administrative review process by following the rules established for that process, exhaustion has not occurred. *See Pozo*, 286 F.3d at 1023.

ANALYSIS

Defendants argue that summary judgment should be granted in Defendant Wexford's favor because Plaintiff's grievances pertaining to his shoulder pain do not sufficiently name Defendant Wexford or its practices or procedures; Defendants further claim that Plaintiff's August 22nd grievance naming Defendant Wexford is untimely. (Doc. 43, p. 11-12). Defendants also argues that summary judgment should be granted as to Defendant Santos for Plaintiff's claims regarding his shoulder pain because his August 15th grievance was untimely. *Id*. p. 8-11. The Court finds that Plaintiff's grievances pertaining to his shoulder pain do not sufficiently name Defendant Wexford. However, his grievance naming Defendant Wexford as complicit in the improper treatment of his anemia is timely. Similarly, the August 15th grievance naming Defendant Santos and accusing him of improper care for Plaintiff's shoulder pain is timely.

I. **Whether Plaintiff Properly Named Defendant Wexford in his Grievances Regarding his Shoulder Pain**

The Illinois Administrative Code requires that a prisoner either name the individuals against whom they are grieving or describe those individuals with "as much descriptive information about the individual as possible." 20 ILL. ADMIN. CODE

§ 504.810(c). However, the code is silent regarding the provision of sufficient identifying information for corporate entities such as Defendant Wexford. "When the administrative rulebook is silent, a grievance suffices if it alerts the prison to the nature of the wrong for which redress is sought." *Strong v. David*, 297 F.3d 646, 650 (7th Cir. 2002). Courts have held that grieving activities for which Wexford was responsible, or for which Wexford was involved in the decision-making process, are generally sufficient to put the prison on notice that the plaintiff was grieving a policy or practice of the corporation. *See Armbruster v. Wexford Health Sources, Inc.*, No. 16-cv-0544-MJR-SCW, 2017 WL 2418724, at *6 (S.D. Ill. June 5, 2017) (internal citations omitted). Similarly, when an inmate grieves "a broad denial of proper treatment by the health care unit as a whole," that inmate has sufficiently provided notice of whether Wexford's policies or practices resulted in inadequate medical treatment. *See Cox v. Wexford Health Sources, Inc.*, No. 16-cv-137-SMY-RJD, 2017 WL 3388159, at *3 (S.D. Ill. Aug. 7, 2017) (internal citations omitted).

However, when an inmate does not reference a specific policy or practice, or otherwise names responsible individuals, rather than attributing responsibility to Wexford, the grievance lacks the specificity necessary for the state to intervene, and the grievance is considered unexhausted. *See Diaz v. Baldwin*, Case No. 18-cv-1426-RJD, 2021 WL 1401463, at *3 (S.D. Ill. Apr. 14, 2021). For instance, in *Diaz*, the plaintiff claimed that he was provided inadequate medical care for an injury to his hand while working at Lawrence. *Id*. at *1. In his grievance, the plaintiff stated that an unknown nurse told him his hand was bruised and sent him back to work. *Id*. The plaintiff also claimed that he

returned with the same symptoms, and another nurse told him his hand was only bruised. *Id*. The plaintiff explained in his grievance that the delay in treatment made surgery to his hand necessary two months later. *Id*. The plaintiff attempted to rely on this grievance in order to proceed on a complaint against Wexford for an unconstitutional policy and practice. *Id*. However, the plaintiff requested the nurses identified in his grievance be terminated, thus placing the blame on the individual nurses involved, rather than on a practice or policy maintained by Wexford. *Id*. at *3. Because the plaintiff named individual defendants and did not specify a policy or practice, the state lacked the information necessary to investigate his claims against Wexford, and his grievance remained unexhausted as to that defendant. *Id*.

Here, it is clear that Plaintiff's June 5th grievance does not sufficiently name Defendant Wexford. In his June 5th grievance, Plaintiff specifically names Defendant Santos. (Doc. 52, p. 93). Plaintiff does not refer to any pattern, practice, or other policy which might be attributed to Defendant Wexford. As in *Diaz*, Plaintiff's attribution of blame to one specific individual suggests that he is grieving only about that individual's care. The IDOC therefore lacked the information necessary to investigate Plaintiff's claims against Defendant Wexford on the basis of this grievance.

Plaintiff's August 15th grievance also fails to identify Defendant Wexford sufficiently for the purposes of exhaustion. In this grievance, Plaintiff states that he sent complaints about his shoulder to Healthcare Administrator Lana; however, because she was on vacation, his complaints were also forwarded to "AWP." (Doc. 52, p. 97). He then

alleges that he saw Defendant Santos, who continued to prescribe him Tylenol. *Id*. at p. 98. Though Plaintiff described his limited movement and showed Defendant Santos an X-ray summary of his shoulder, Defendant Santos only told him to continue with his Tylenol prescription and to do daily exercises. *Id*. This grievance lists specific complaints against Defendant Santos's individual treatment of Plaintiff. Because Plaintiff's August 15th grievance implicates only one individual in the underlying complaint, it does not provide sufficient information for the IDOC to believe that Plaintiff was actually complaining about Defendant Wexford's policies or practices. Accordingly, this grievance remains unexhausted against Defendant Wexford.

## II. Whether Plaintiff's August 15th and August 22nd Grievances are Timely

Grievance officers maintain the discretion to consider and address an untimely grievance. *See, e.g.*, 20 ILL. ADMIN. CODE § 504.810(a)(noting that a grievance officer may address a grievance if an offender shows it was not timely filed for good cause). If a grievance officer chooses to address an untimely grievance on its merits, the grievance "has served its function of alerting the state and inviting corrective action[.]" *Maddox v. Love*, 655 F.3d 709, 721-722 (7th Cir. 2011) (internal citations omitted). A procedural deficiency, such as "failing to follow the prison's time deadlines[,] amounts to a failure to exhaust only if prison administrators explicitly relied on that shortcoming." *Id*. (internal citations omitted). By responding to a grievance on its merits, the counselor, grievance officer, and the ARB address the underlying issues and satisfy the purpose of the

exhaustion requirement under the PLRA. *See Kane v. Santos*, No. 17-CV-01054-NJR-RJD, 2020 WL 967878, at *4 (S.D. Ill. Feb. 28, 2020).

Defendants argue that Plaintiff's August 15th and August 22nd grievances are untimely. (Doc. 43, p. 11-12, 8-11). However, the grievance officer reviewing the grievances and the ARB in the appeal of that decision each denied Plaintiff's grievances on the merits. For instance, the grievance officer reviewing Plaintiff's August 22nd grievance stated that Plaintiff's "anemia has been evaluated, treated, and resolved with surgical intervention of his primary condition . . ." (Doc. 43, Exh. B, p. 12). The ARB upheld this denial because Plaintiff's complaint was appropriately addressed by the facility. *Id*. at p. 11. Equally, in response to Plaintiff's August 15th grievance, the grievance officer denied the grievance and found the prescription was appropriate. *Id*. at p. 18 (noting that the "physician determines medication prescriptions and referrals to specialists"). The ARB upheld this denial as appropriately addressed by the facility. *Id*. at p. 15. Neither the reviewing grievance officer nor the ARB explicitly relied on Plaintiff's alleged untimeliness when denying his August 15th and August 22nd grievances. Because the IDOC had an opportunity to address Plaintiff's claims on their merits, as required for exhaustion under the PLRA, Defendants cannot now rely on an alleged procedural defect in order to defeat Plaintiff's claims. Accordingly, the Court finds that both grievances are exhausted, and Plaintiff may proceed with his claims regarding his shoulder pain against Defendant Santos, and his claims regarding his anemia against Defendant Wexford and Defendant Santos.

## CONCLUSION

For the above-stated reasons, Defendants' motion for summary judgment (Doc. 42) is **GRANTED in part and DENIED in part.** Summary judgment is granted for Defendant Wexford in relation to Plaintiff's allegations that Defendant Wexford adopted unconstitutional policies and practices which caused him to receive improper care for his shoulder pain. *See* (Doc. 8, p. 4, Count III). However, summary judgment is denied as to Count II and Plaintiff's anemia claims in Count III.

**IT IS SO ORDERED.**

**DATED:  July 19, 2021.**

Digitally signed by
Judge Sison 2
Date: 2021.07.19
12:55:34 -05'00'

_____

**GILBERT C. SISON**
**United States Magistrate Judge**